609 A.2d 687 (1992)
Cristino A. PORTILLO, Appellant,
v.
UNITED STATES, Appellee.
No. 90-CF-1354.
District of Columbia Court of Appeals.
Argued April 16, 1992.
Decided June 23, 1992.
*688 Kenneth H. Rosenau, Washington, D.C., appointed by the court, for appellant.
Kristan Peters-Hamlin, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.
Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.
FERREN, Associate Judge:
A jury found appellant, Cristino A. Portillo, guilty of possession of cocaine with intent to distribute, D.C.Code § 33-541(a) (1988 and 1991 Supp.). Appellant challenges his conviction on the grounds that (1) the prosecutor's closing argument improperly appealed to the prejudice and racial or ethnic bias of the jury, and (2) the prosecutor's questions about appellant's status as an illegal alien deprived him of a fair trial. Although we agree with appellant that some of the prosecutor's remarks were improper or ill-advised, we conclude that the challenged irregularities did not result in plain error. We affirm.

I.
On August 15, 1989, at about three a.m., Officer Francis X. Morgan, Jr., received a radio broadcast that "subjects were breaking into the cars along Columbia Road ... near the phone company." When Officer Morgan arrived on the scene, he saw a group of persons standing around a Nissan *689 automobile.[1] Calling for backup, Morgan questioned them about what they were doing and kept the individuals present together in a group until Officers Gray and Soulsby arrived. The three officers then "check[ed] them out and [] told everybody to turn around and put their hands on the car." Appellant had a shirt in his hand. Before placing his hands on the car as instructed, appellant shook the shirt he was carrying, and out of the shirt fell a packet containing ten rocks of cocaine packaged in small clear ziplock bags, along with three empty ziplock bags.[2] After a field test indicated that the substance was cocaine, appellant was arrested and searched. He was carrying $557 in currency.
When Officer Morgan questioned appellant at the station house, the officer "got his name, got his date of birth, got an address."[3] Appellant was unemployed at the time of his arrest.

II.
Appellant is a 23-year-old native of El Salvador who entered the United States "without papers." He testified at trial through an interpreter. Appellant challenges as "racially inflammatory" several remarks made by the prosecutor, claiming that the questionable remarks appealed to the jury's prejudice and deprived him of his right to a fair trial under the Sixth Amendment. He further contends that the comments referring to his illegal immigration status amounted to impermissibly prejudicial "other crimes" evidence.
The challenged remarks are: (1) The prosecutor once addressed appellant as "Señor Portillo;" this is the only asserted error to which defense counsel objected at trial. (2) The prosecutor questioned appellant about his immigration status and the risk of deportation upon conviction. (3) The prosecutor remarked, without evidentiary foundation, that "no one on the streets of D.C. carries their life savings around." Appellant argues that this statement disparaged immigrants in particular and the impoverished in general and that it accordingly appealed to the jury's prejudice. (4) The prosecutor suggested that appellant's immigration status negatively impacted his credibility because his illegal status indicated that appellant had "engaged in the grandest form of deception" by illegally entering the country. (5) Finally, the prosecutor suggested that appellant was not truthful regarding his fluency in English, thereby inflaming the jury's prejudice against Hispanics.[4]
Before appellant took the stand, the prosecutor informed the trial judge and defense counsel that he intended to question appellant about his immigration status, noting that the threat of deportation "goes directly to bias." Defense counsel responded, "Your Honor, in view of the relevance of his immigration status to other matters, as a tactical decision I'm not going to object to that line of inquiry, if it's more or less limited. . . ."

III.
In evaluating the prosecutor's statements at trial, we first must determine whether any of the challenged comments was improper. McGrier v. United States, 597 A.2d 36, 41 (D.C.1991); Dixon v. United States, 565 A.2d 72, 75 (D.C. 1989). Viewing the remarks in context, if *690 we conclude that they were improper, then we must "`consider the gravity of the [impropriety], its relationship to the issue of guilt, the effect of any corrective action by the trial judge, and the strength of the government's case.'" McGrier, 597 A.2d at 41 (quoting Dixon, 565 A.2d at 75). If an improper remark drew an objection from defense counsel at trial, we will nevertheless affirm the conviction unless the defendant suffered "substantial prejudice."[5]Id. If, on the other hand, the defendant failed to object to the improper remark, in order to obtain a reversal, appellant must show plain error, i.e., "error `so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" Id. (quoting Watts v. United States, 362 A.2d 706, 709 (D.C. 1976) (en banc)). Without an objection at trial, we will reverse a conviction based on improper prosecutorial argument "only in a `particularly egregious' case, when `a miscarriage of justice would otherwise result.'" Id. (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). In light of these standards, we examine the prosecutor's challenged comments.
The prosecutor's addressing of appellant as "Señor Portillo," the only claimed prejudicial reference to which counsel objected, was an isolated incident, was not inherently derogatory, and, in any event, may have been inadvertent. There was no evidence that the prosecutor spoke in a tone indicating sarcasm or lack of respect when he addressed appellant as "Señor."[6] We would not be troubled by this reference except that it occurred in the midst of a trial that included negative comments regarding appellant's ethnicity and immigration status. But our concern is lessened because of defense counsel's own tactical decision to emphasize appellant's illegal immigration status. Furthermore, we cannot say that a single reference to the defendant by a common form of address in his native language amounted to prosecutorial misconduct.
Nor do we find misconduct in the prosecutor's cross-examination of appellant about his immigration status. Defense counsel had announced that appellant's immigration status was relevant to other matters.[7] Once appellant admitted that he had entered "without papers," he opened the door to the government's exploration of his status with the Immigration and Naturalization Service. See United States v. Bagaric, 706 F.2d 42, 65 (2d Cir.1983) (where defendant testified on direct examination that he had sought and been denied political asylum in United States, defense had opened the door to cross-examination on immigration matters); State v. Lopez, 107 Ariz. 214, 484 P.2d 1045, 1048 (1971) (no abuse of discretion in permitting prosecutor to cross-examine concerning illegal entry because defendant in testifying that he was Mexican national and that he had "never been arrested or gotten in any trouble" had opened the door to impeachment of his credibility).
Where the prosecutor went wrong concerning appellant's immigration status, however, was to suggest that the illegal entry itself was "the grandest deception," which rendered appellant's testimony incredible. This implies that anyone who  for whatever reason  has crossed our borders in violation of the government's immigration procedures should not be believed. Appellant, however, had not been convicted of an immigration-related offense. "[A] witness may be cross-examined on a prior *691 bad act that has not resulted in a criminal conviction only where `(1) the examiner has a factual predicate for the question, and (2) the bad act "bears directly upon the veracity of the witness in respect to the issues involved [i]n the trial."'" Sherer v. United States, 470 A.2d 732, 738 (D.C.) (quoting United States v. Akers, 374 A.2d 874, 878 (D.C.1977) (quoting Kitchen v. United States, 95 U.S.App.D.C. 277, 279, 221 F.2d 832, 834 (1955), cert. denied, 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958))), cert. denied, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). Appellant's unlawful presence in this country did not bear directly upon his veracity in respect to the issue of his guilt on the charge of distributing drugs. Thus, the prosecutor could not properly use appellant's illegal status to argue against his general credibility. See id.
The prosecutor further argued, in an effort to link the $557 found on appellant to drug distribution activity, that "no one on the streets of D.C. carries their life savings around."[8] Since there was no testimony supporting this generalization, the prosecutor necessarily was appealing to the jurors' own experiences. But those experiences might have little relevance to illegal immigrants unable or reluctant to open bank accounts. We need not decide whether this remark was plain error. Nonetheless, we do caution government attorneys, in a multi-cultural urban setting such as ours, to be wary of generalized appeals to jurors' life experiences that may not fit the situations of defendants of other ethnic or national origins.
Finally, the prosecutor remarked that "people that have been in this country a lengthy period of time know some English." Appellant argues that this comment appealed to the jury's possible prejudice against Hispanics and other non-English speakers who, despite residence in this country, may not have endeavored to learn English. Under the circumstances, we disagree. Given appellant's denial that he understood English,[9] the question whether he in fact understood and spoke enough English to carry on the conversation which the government asserted he had had with Officer Thomas was an issue in the case. Thus, it was not improper for the prosecutor to argue that appellant, given the length of time he had been in the country, would likely have known the rudiments of English enough to carry on the basic conversation the government alleged had taken place. Nonetheless, a cautionary word is again in order: prosecutors must be careful about making generalizations about the fluency immigrants probably would have achieved in English after a substantial residency here. The danger is that jurors will understand such generalizations to mean what immigrants "ought" to have achieved.
We conclude, however, that none of the improprieties alleged by appellant  singly or in combination  rose to the level of plain error, because the comments were not "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." McGrier, 597 A.2d at 41. First of all, the evidence against appellant was strong. Officer Morgan testified that he saw the drugs drop from the shirt to appellant's feet, and Officer Grey testified that she saw Morgan retrieve the packet from a position at appellant's feet. Officer Grey recovered $557 from appellant's right front pants pocket. Moreover, the prosecutor made clear that his remarks were intended to address appellant's credibility, not his guilt. In questioning appellant's ability to speak English and his possession of such a large sum of money, the prosecutor indicated that he meant to suggest that the jury should not believe appellant, not that these factors *692 themselves indicated that appellant had committed the crime. This limitation tended to blunt any prejudicial impact of the remarks. Finally, we note that appellant's defense made use of his illegal immigration status to provide an innocent explanation for one incriminating fact, namely, that he had $557 on his person at the time of his arrest.
Affirmed.
NOTES
[1] The car had not been tampered with, and none of the other individuals stopped with appellant was arrested.
[2] The government's expert testified that the cocaine weighed 3.441 grams and had a street value of approximately $200.
[3] Although Officer Morgan testified that appellant was able to respond to the officer's questions, we disagree with the government's assertion that the record supports a inference that appellant and Officer Morgan had a "conversation" in English.
[4] "The line of demarcation is crossed ... when the argument shifts its emphasis from evidence to emotion. When that is done, it matters not whether the reference is to race, ancestry or ethnic background." United States v. Doe, 284 U.S.App.D.C. 199, 208, 903 F.2d 16, 25 (1990) (footnotes omitted). "The impropriety of pleas capable of arousing racial biases is consistently recognized even when they fall short of the danger zone, or are justified by the circumstances." Id. at n. 63.
[5] To assess "substantial prejudice," we must determine "whether we can say `with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" McGrier, 597 A.2d at 41 (quoting Williams v. United States, 483 A.2d 292, 297 (D.C.1984), cert. denied, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985)).
[6] If we had found such evidence, we would look more closely at the question whether the prosecutor acted improperly by using that form of address.
[7] We assume that defense counsel meant that appellant's illegal immigration status would explain his possession of so much money in cash  i.e., why he carried the money on his person rather than putting the money in the bank.
[8] Appellant had testified that the money in his pocket was his savings.
[9] Appellant does not dispute that the prosecutor could fairly ask appellant on cross-examination whether he understood English and had answered some questions Officer Thomas had asked him.