**Recco BOUKNIGHT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–1310.**

District of Columbia Court of Appeals.

Argued Dec. 7, 1993.

Decided May 19, 1994.

Mark J. Rochon, Washington, DC, for appellant.

Robert T. Swanson, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and Larry R. Parkinson, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY, SCHWELB and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Recco Bouknight, was convicted of first-degree murder while armed (felony murder), D.C.Code §§ 22–2401 and 3202 (1989), first-degree burglary while armed, id. §§ 1801(a) and 3202; attempted robbery while armed, id. §§ 2902 and 3202; carrying a pistol without a license, id. § 3204(a) (1993 Supp.); and possession of a firearm during a crime of violence, id. § 3204(b) (1993 Supp.).[1] On appeal, appellant contends that the trial court committed reversible error by (1) giving the jury a supplemental instruction with a new theory of liability after deliberations had begun and thereafter limiting the scope of supplemental argument with respect to that instruction; (2) failing to declare a mistrial after a witness refused to testify in front of the jury; and (3) failing to adequately correct prosecutorial impropriety. Finding no error, we affirm.

## I.

On the evening of November 13, 1989, Lloyd Thomas was robbed and fatally shot in the apartment of Angela Mercer in Southeast Washington. Sometime after the shooting, Mr. Thomas' body was thrown out of the apartment window. After receiving an anonymous 911 call regarding the shooting and disposal of the body, the police arrived at the scene shortly after midnight and found Mr. Thomas' lifeless body lying in front of the apartment building.

The government's case against appellant consisted of his signed confession and the testimony of an eyewitness to the murder, Angela Mercer ("Mercer"). According to Mercer's testimony, on the night of the murder, Lloyd Thomas was visiting her in her apartment when the appellant knocked at her door and asked if she had company and if her company had money. Mercer let appellant in the apartment, but told him not to do anything to Thomas. They talked briefly in the kitchen while Thomas remained in the bedroom. Appellant then went to the front door of the apartment, at which time Mercer believed he was leaving. However, when appellant reached the door, he let three of his friends in Mercer's home. Mercer testified that one of the men handed appellant a gun, and the group headed for the bedroom. As she followed the group toward the bed-

---

1. Marquette Witherspoon, Irving Thomas Bolden and Steven Davis were indicted with appellant. Witherspoon was tried with appellant, but a mistrial was declared when the jury could not reach a verdict; the government did not retry Witherspoon. Bolden pleaded guilty to certain charges, and Davis died before he could be tried.

room, she yelled a warning to Thomas. When she reached the bedroom doorway, appellant was pointing the gun at Thomas. Thomas said, "what's up?" and reached into his coat pocket. Appellant responded by shooting Thomas. Mercer then fled the apartment, and the group of young men, including appellant, also exited.

Appellant testified and admitted signing the confession, but maintained that he did not read the statement before signing it. Asserting an alibi defense, he claimed that he was visiting "Lee Lee," a girl who lived on the fifth floor of Mercer's apartment building, at the time of the murder.

## II.

■ Appellant contends that the trial court erred in giving a supplemental instruction to the jury after deliberations had begun and thereafter limiting the scope of his trial counsel's argument to the issue of aiding and abetting as set forth in the supplemental instruction. He also argues that the supplemental instruction was not balanced and that it tended to favor conviction.

In its original instructions to the jury, the trial court stated that to convict appellant of burglary while armed, it must find beyond a reasonable doubt:

> one, that the defendant broke and entered or entered without breaking, the dwelling or room of another, used as a sleeping apartment; two, that at the time of the entry, any part of the dwelling or room used as a sleeping apartment, was occupied; and three, that at the time of the entry, the defendant had the specific intent to steal as to count one, or, commit an assault, as to count two; and, four, that the defendant was armed with a pistol.

During the afternoon on the first day of deliberations, the jury sent a note to the trial judge asking whether in order to convict of burglary while armed, "the defendant must be armed at the time of entry into the apartment." The court answered "yes" to the jury's question. At that time, the government requested that an aiding and abetting instruction be given to the jury. The court,

however, declined to give the instruction, stating, "it was obvious to the jury and it was obvious to all of us during the discussion ... [that appellant] was the principal."

Later that same afternoon, the government again asked the trial court to give an aiding and abetting instruction to the jury, arguing that appellant could be convicted of aiding and abetting if he had entered the apartment with an accomplice who was carrying a gun. The government explained that it was arguing the same facts but proffering a new theory of liability, the need for which did not become apparent until the jury posed its question to the court during deliberations. The trial court agreed, stating,

> [T]here is ... an injustice done to the Government here, by not correcting the mistake, because the facts clearly support an aiding and abetting theory here and it's an alternative theory of liability. It's not a new charge. No question of notice here.

In the morning of the second day of deliberations, the judge issued a supplemental instruction informing the jurors that they could convict appellant of burglary while armed if they found that he had aided and abetted the armed burglary. The instruction stated:

> Ladies and gentlemen of the jury, yesterday you sent me a note asking, whether to prove that a burglary was committed while armed, if the Government needed to prove that the defendant was armed at the time of entry and I answered, yes. I would like to elaborate on that answer, and in this closing instruction, I may have given you and the attorneys, a wrong impression as to the armed element of burglary in the first degree.

> You may consider the aiding and abetting instruction with respect to Mr. Bouknight, as well as Mr. Witherspoon.[2] I also want to make clear that the defendants may not be found guilty of the armed element of burglary in the first degree unless the Government proves, beyond a reasonable doubt, that it was reasonably foreseeable to them that some type of weapon was required to carry out the burglary. This

foreseeability may be proved by direct or circumstantial evidence.

The Supreme Court has stated that "[w]hen a jury makes explicit its difficulties[,] a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). Supplemental instructions are one means by which a trial court may alleviate juror confusion. Indeed, this Court has held that the "decision on what further instructions, if any, to give in response to a jury question lies within the sound discretion of the trial court." *Tyler v. United States,* 495 A.2d 1180, 1183 (D.C. 1985) (citing *Murchison v. United States,* 486 A.2d 77, 83 (D.C.1984)). Here, it was well within the discretion of the trial court to issue the supplemental instruction on aiding and abetting in order to alleviate the jurors' confusion during the deliberations. Thus, this case is indistinguishable from *Atkinson v. United States,* 322 A.2d 587, 588–89 (D.C. 1974), in which this Court found no abuse of discretion where a trial court gave a supplemental instruction on aiding and abetting in response to a jury's question asked after deliberations had begun. By giving the supplemental instruction, the trial court simply clarified the law for a jury which was experiencing difficulties.

Moreover, the supplemental instruction given by the trial court was entirely proper because the facts presented supported an aiding and abetting theory. The testimony of Angela Mercer, an eyewitness to the crime, and the signed confession of the appellant established appellant's presence and participation in the crime. Angela Mercer testified that one of the three men who entered her apartment had a gun which he handed to appellant as the group rushed towards the victim in the bedroom. In addition, in appellant's confession, he stated that the gun used in the shooting "came from Steve." He explained that his aunt "told [him] to rob the guy. That's when Steve gave [him] the gun." Though the government's original theory of the case was that appellant was a principal in the commission of the crime, "if there is clear and convincing evidence that the defendant was present and participating in the crime, a trial court's instruction on aiding and abetting does not mislead the jury or require reversal." *Head v. United States,* 451 A.2d 615, 626 (D.C.1982). Even if we assume, solely for the sake of argument, that an aiding and abetting instruction was inappropriate because there was no evidence that someone other than Bouknight was the principal whom Bouknight aided and abetted, *see Brooks v. United States,* 599 A.2d 1094, 1099 (D.C.1991), we conclude that, in light of Ms. Mercer's testimony and Bouknight's confession, any error was harmless.[3]

The supplemental instruction was neither unbalanced nor so suggestive of conviction as to be prejudicial to appellant. Although the instruction did provide an alternate route to conviction, it did not suggest to the jurors that they *should* convict or place improper emphasis on the government's theory of the case. The instruction concluded:

> You are not to assume that because I gave supplemental instructions or let the attorneys give further argument, the supplemental argument or instructions or arguments of counsel are to receive special emphasis. You should consider all instructions and evidence in deciding whether the defendants have been proved guilty, and evaluate all the arguments of the attorneys as you consider the case.

The supplemental instruction referred to both defendants and was presented in the context of clarification of the earlier instruction. Moreover, the trial court, quite conscientiously, admonished the jurors that the supplemental instruction and supplemental arguments were not to receive special emphasis, but rather they were to consider all the evidence and arguments presented throughout the trial in determining appellant's innocence or guilt. The trial court's supplemental instruction was responsive to

---

**3.** *But cf. Felder v. United States,* 595 A.2d 974, 977 (D.C.1991) ("While it is also true that there must be evidence that someone other than the defendant was the principal whom the defendant aided and abetted, [i]t is generally agreed, however, that it is not essential that the principal in the operation be identified so long as someone ha[s] that status.") (citations and internal quotation marks omitted).

the jury's question and balanced on its face. *See Davis v. United States*, 510 A.2d 1051 (D.C.1986) (per curiam).

## III.

■ We also find no error in the trial court's limitation on the scope of counsels' arguments. After giving the supplemental instruction, the trial court permitted both lawyers to address the jury on the aiding and abetting armed robbery instruction only. The court stated, "I don't think that I consider this a matter in which we're going to reargue the whole case.... [Y]ou can argue the evidence regarding the aiding [and abetting]—I expect everybody to regard the evidence with aiding and abetting and what the evidence is regarding the aiding and abetting on the armed element."

■ It is well-established that the trial court has broad discretion in controlling the scope of closing argument. *United States v. Sawyer*, 143 U.S.App.D.C. 297, 443 F.2d 712 (1971). This same principle applies to a trial court's decisions regarding the extent and scope of additional arguments made pursuant to a supplemental instruction. It was well within the trial court's discretion to limit the scope of argument in order to prevent repetition of all the arguments presented throughout the entire trial. Moreover, appellant was not prejudiced by the limitation on the scope of argument. Despite the limitation, counsel for appellant was still able to argue his theory of the case—that appellant was not at the apartment the evening of the murder and therefore was neither an aider and abettor nor a principal to the crime. Thus, the appellant was not prevented from "making a point essential to [his] defense." *United States v. Sawyer, supra,* 143 U.S.App.D.C. at 298, 443 F.2d at 713.

## IV.

■ Next, appellant claims that the trial court erred in failing to declare a mistrial after Eric Boyce, appellant's cousin, declared his refusal to testify in front of the jury. He argues that Boyce's refusal to testify permitted the jury to make improper inferences that prejudiced him in his defense.

During its opening statement, the government proffered to the jury that it would learn that "among the people who threw that body out the window were these two men right here, Recco Bouknight and Marquette Witherspoon." Boyce was not identified by name in the opening statement, but the government expected him to testify that he saw appellant at the window when the body of the decedent was thrown from the apartment. It was not until the following day that the government, for the first time, had any indication that Boyce would not testify. Before Boyce was called as a witness, Witherspoon's attorney told the prosecution that Boyce had indicated to him that he would not testify against appellant and Witherspoon. However, Boyce had cooperated fully with the prosecution in all his previous interactions with them and had asserted no privilege at trial. Consequently, the trial court denied the request by appellant's trial counsel to voir dire Boyce, outside the presence of the jury, as to whether or not he would testify. After Boyce was sworn in, he answered a few preliminary questions by the prosecutor, then stated, "I ain't going to testify against them." The trial court immediately responded by telling jurors, "Please don't speculate about what just happened here."

Appellant's counsel made a motion for a mistrial, claiming that appellant was prejudiced by Boyce's refusal to testify in front of the jury, but the trial court denied appellant's motion. However, recognizing the possibility that Boyce's silence might be prejudicial to appellant, the trial court gave the following curative instruction:

> [Y]ou heard a witness come in here Thursday and start to testify and then get off the stand and go in back and, as I told you at that point, I don't want you all guessing as to what he would have said.... [W]hat he said is not to enter into your minds at all in entering into your decision and not to enter into your discussion, obviously, for the same reason.
>
> Now, the reason for this is ... very simple. He did not give testimony that was subject to examination or cross examination in public, here in front of everybody.... [I]t's wrong for you to take a

guess at what he would have said or would not have said, or use anything he said in making your decision.

In determining whether a witness' refusal to testify in front of a jury constitutes error requiring reversal, this Court considers (1) whether there was prosecutorial impropriety and (2) whether, "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Burkley v. United States*, 373 A.2d 878, 880 (D.C.1977) (internal quotation marks omitted) (quoting *Namet v. United States*, 373 U.S. 179, 187, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963)).

There was no prosecutorial impropriety here by the government in calling Boyce to testify. There is no indication from the record that the prosecutor knew that Boyce would not testify or that the prosecutor called him as a witness in order for the jury to hear his refusal to testify. There is also no indication that the refusal to testify "added critical weight" to the government's case. The government had already presented an eyewitness to appellant's involvement in the crime and introduced appellant's signed confession. Any damaging inference that could be drawn from Boyce's refusal to testify certainly did not add critical weight to the government's case. The prejudice, if any, to appellant "was not substantial enough to justify reversal." *Burkley, supra*, 373 A.2d at 880.

Moreover, the trial court's immediate instructions addressing Boyce's refusal to testify cured any error. "There is respectable authority which holds a cautionary admonition by a trial judge to the jury can cure error which might otherwise be prejudicial to a defendant." *Id.* at 881; *see also Frazier v. Cupp*, 394 U.S. 731, 735–36, 89 S.Ct. 1420, 1422–23, 22 L.Ed.2d 684 (1969). The trial court here admonished the jurors that they were not to speculate as to what Boyce might

have said and not to consider his refusal to testify in their decision.[4] Assuming, as we must, that the jury followed the instructions given by the trial judge, the appellant has not demonstrated that he suffered prejudice warranting reversal. *Harris v. United States*, 602 A.2d 154, 165 (D.C.1992) (en banc) (citing *Clark v. United States*, 593 A.2d 186, 193 (D.C.1991)); *Crockett Engineering Co. v. Ehret Magnesia Mfg. Co.*, 81 U.S.App. D.C. 159, 156 F.2d 817 (1946).

### V.

Appellant's final contention is that prosecutorial impropriety in closing argument mandates reversal of his convictions. Appellant argues that the government's closing argument amounted to a claim that a homicide detective had a special regard for the truth, unlike other witnesses, thus bolstering the detective's credibility and unfairly strengthening the government's case. Because the jury was required to compare the credibility of appellant and police detective Victor Smith in resolving their conflicting testimony regarding the voluntariness of appellant's confession, appellant contends that the bolstering of the detective's credibility constituted reversible error. *See Hinkel v. United States*, 544 A.2d 283, 286 (D.C.1988) ("What the prosecutor may not do, however, is argue that the police officer witness is credible simply because he or she is a police officer.")

The government, in its closing argument, emphasized the significance of the jury's duty in the case:

> And I want to leave you with one last thought and that relates to the task you're about to do. And this is a thing that I keep on my bulletin board. It's called "The Homicide Investigator." ... [I]t's written for ... a police detective, primarily, but it ... summarizes very clearly what your job is because right now you're homicide investigators. You have been since you started hearing evidence in this case.

4. Although we discern no abuse of discretion by the trial judge in not determining in advance, outside the presence of the jury, whether Boyce would refuse to testify, we note that such a procedure would have eliminated the risk of prejudice created by Boyce's statement that "I ain't going to testify against them"—a remark from which jurors could perhaps infer that Boyce knew something but had been threatened.

You're investigating a homicide, just like the police do.

You're doing it in a little different way. You do it through the court—through testimony in court, but you're homicide investigators and this is entitled "The Homicide Investigator. No greater honor will ever be bestowed on an officer or a more profound duty imposed on him than when he's entrusted with the investigation of the death of a human being. It is his duty to find the facts, regardless of color or creed, without prejudice, and to let no power on earth deter him from presenting these facts to the Court, without regard to personality."

And at this time, that's what I ask you to do. Don't let anything deter you from finding the facts. Do justice and come back with a verdict of guilty against both defendants. Thank you.

Trial counsel for appellant objected to the reference to the "homicide investigator's oath," claiming that the prosecutor unfairly bolstered the credibility of Detective Victor Smith. The government, however, claimed that its purpose in reciting the "homicide investigator's oath" was to focus the jurors' attention on the importance of their task and to decide the facts. The trial court overruled appellant's objection, concluding that any reference to the credibility of government witness, Detective Smith, was unintended. The trial judge, nonetheless, instructed the jury to disregard any impression that the government's closing argument may have left, besides encouraging jurors to decide the case without prejudice, fear, sympathy or favor. The trial court admonished:

> Now, Mr. Parkinson's comments at the end of his argument about the detective's motto or creed, that was meant, I think, to get across that point, that you are to be—decide the case without fear, sympathy or favor, solely from a fair consideration of the evidence, and that's, of course basic in the law. Now, the other part of what he said about the homicide detective motto, I think you should ignore in the case. That is not the important part of what you're gonna do, but that central part about being fair and deciding the case without preju-

dice, fear, sympathy, or favor, is a point that you should, of course, have in mind when you make your decision.

The trial court also gave the standard instruction on police credibility:

> You should consider a police officer's testimony just as you consider any other evidence. In evaluating his or her believability, you should use the same guidelines you apply to the testimony of any witness. In no event, should you give either greater or lesser belief to the testimony of any witness, merely because he or she is a police officer.

■ This Court must consider the following factors in evaluating appellant's claim of prosecutorial impropriety:

> we must determine whether the prosecutor's comments constituted misconduct, and if so, then, viewing the comments in context, we must consider the gravity of the misconduct, their direct relationship to the issue of guilt, the effect of specific corrective instructions by the trial court, and the strength of the government's case.

*Hammill v. United States,* 498 A.2d 551, 554 (D.C.1985) (citations omitted). In reviewing a prosecutor's statements at trial, this Court will affirm a conviction unless appellant suffered substantial prejudice. *Portillo v. United States,* 609 A.2d 687, 690 (D.C.1992). We conclude that appellant did not suffer substantial prejudice here warranting reversal as a result of the prosecutor's closing argument. Given the eyewitness testimony of Angela Mercer, the confession of the appellant, and the curative instructions issued by the trial court in response to the prosecutor's closing argument, we can conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Portillo, supra,* 609 A.2d at 690 n. 5 (internal quotation marks omitted) (quoting *McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (citation omitted)). Accordingly, appellant's convictions are

*Affirmed.*