Anthony YELVERTON, Appellant,

v.

UNITED STATES, Appellee.

No. 03–CF–1204.

District of Columbia Court of Appeals.

Argued May 18, 2006.

Decided Aug. 10, 2006.

Eve Hanan, Public Defender Service, with whom James Klein, Sandra K. Levick, Jennifer C. Daskal, and Samia Fam, Public Defender Service, were on the brief, for appellant.

George Hazel, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, Roy W. McLeese III, David C. Woll, Jr., and Stephanie L. Brooker, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and KRAMER, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Anthony Yelverton was found guilty in a jury trial of one count of unlawful possession of heroin with intent to distribute and one count of unlawful possession of cocaine with intent to distribute.[1] Appellant argues that the trial court erred by (1) responding to a juror's questions regarding third-party perpetrator evidence with a supplemental instruction that included extraneous and distracting information and was unbalanced in the government's favor; and (2) instructing the jury that the investigating officers were not required to photograph the controlled substances at the crime scene, despite the government's failure to present evidence that no such requirement existed. Although we agree that the first instruction was erroneous, and the government concedes that the second was as well, we conclude that the errors in both instances were harmless, and therefore affirm.

## I.

On February 19, 2003, members of the District of Columbia Metropolitan Police Department's (MPD) Focus Mission Team were on patrol in Southeast Washington, D.C. Some of the officers traveled in an unmarked Ford Crown Victoria, while others followed in an unmarked Chevrolet Lumina.[2] Although none of the officers

---

1. Both counts charge violations of D.C.Code § 48–904.1 (2001).

2. The various witnesses' accounts of events were somewhat inconsistent as to how many,

wore full uniforms, most wore either vests emblazoned with the word "Police," blue jackets bearing "MPD markings" or both.[3]

When the two vehicles reached the 5500 block of Central Avenue, several of the officers noticed appellant standing in front of a liquor store, speaking with an unidentified man. Appellant made at least one "tossing" motion, and something landed in the snow next to him.[4] On the ground near appellant, officers found a brown paper bag. Inside the paper bag they discovered many smaller ziplock bags. Some of the ziplock bags contained "white rock-like substance[s]," which later tested positive for crack cocaine, while others held a white powder, which later tested positive for heroin. Additional ziplock bags containing crack cocaine were found on the ground near the brown paper bag. The police officers took no photographs of the drugs at the scene.

Appellant was arrested at the scene. The officers did not stop, search, or question the man initially seen standing with appellant. According to one of the officers, the man "was not searched because he was not observed doing anything ... illegal or that would draw suspicion to him." Another officer testified that he was "almost certain other officers stopped [the man seen standing with appellant], but they did not search him." None of the other evidence at trial confirmed this assumption.

At trial, defense counsel called Ebony Stoddard, a friend of appellant's brother, who testified that she had witnessed the arrest. According to Ms. Stoddard, moments before appellant's arrest, she saw appellant standing in front of a liquor store on Central Avenue, speaking with a man she knew only as "Warren." Ms. Stoddard did not see appellant toss anything. In fact, Ms. Stoddard testified that the only thing in appellant's hands prior to his arrest was what she described as a phonebook. Police records admitted into evidence at trial established that officers did, in fact, seize a phonebook from appellant at the time of his arrest. Ms. Stoddard further testified that the man she called Warren quickly left the scene when the police arrived.

Defense witness Adrienne Banks testified that, on the evening of February 19, 2003, she encountered appellant as she exited a liquor store on Central Avenue. Ms. Banks stated that she did not see a paper or plastic bag in appellant's hands, although she did notice that he carried a book. Ms. Banks further maintained that she never saw appellant toss anything. Ms. Banks admitted, however, that she did not know what occurred outside while she was in the liquor store.

During the defense's closing argument, defense counsel contrasted appellant's be-

if any, other vehicles traveled with the Crown Victoria and the Lumina.

3. Although both the Crown Victoria and the Lumina were unmarked, the testimony of various police witnesses tended to establish that both cars had been involved in numerous arrests in the area. One police officer used the term "burned car" to describe such unmarked police vehicles that had been used so frequently in undercover operations in a certain area that residents of the area had become aware of their status as police vehicles.

He further explained that a Crown Victoria, in particular, could be easily identified as a police vehicle.

4. The individual trial testimony of four police officers, all of whom claimed to have observed appellant toss something, contained some inconsistencies with regard to the timing and number of tosses. We have examined these inconsistencies and conclude that they were relatively minor in the overall picture of what occurred and unlikely to have affected the jury's verdict.

havior with the conduct of the man referred to as "Warren." She reminded the jury that appellant never attempted to flee, while Warren "immediately left the area" when the police arrived. According to defense counsel, while "[appellant's] behavior [was] consistent with someone innocent of a crime," Warren's conduct was "consistent with someone who had drugs on [him]."

Defense counsel further reminded the jury that when the officers searched appellant they failed to uncover additional drugs, and they found no drug paraphernalia, weapons, or other tools of the drug dealer's trade. She asked the jury, "Don't you wonder what that [Warren] would have said if he were questioned? Don't you wonder if that person had been searched if [he] would have had drug paraphernalia, if [he] would have had weapons or a beeper"? Immediately after posing these questions, counsel stated:

> When you have questions, remember where the burden lies. The burden lies with the prosecution. Not only do they have to prove that a crime was committed but they have to prove who did that crime. If you have a doubt about who tossed those drugs or who left that area and why that person left the area etcetera, that's a reasonable doubt. That's a doubt upon which you have a reason and you need to look to the government.

Defense counsel followed immediately with the argument that the police conducted a "sloppy" investigation, and went on to fault the arrest team, in particular, for failing to take photographs or make a diagram of the crime scene.

In his rebuttal argument, the prosecutor made no reference to Warren. He did not argue that, given the police officers' testimony about Warren, they thought they had no basis for stopping or questioning him.

Approximately two and a half hours after the jury began deliberating, the trial judge received a note from the jury. According to the note, "one of the issues [the jury is] debating concerns Warren whom several jurors are bringing into the decision regarding the guilt or innocence of the defendant." The note requested that the judge "instruct the jury as to whether or not this other person, Warren, is to even be discussed in deliberations."

The trial judge invited defense counsel and the prosecutor to suggest how the court should respond. Defense counsel maintained that the jury should consider the testimony concerning Warren, because the possibility that Warren was the source of the drugs could create a reasonable doubt as to appellant's guilt. The prosecutor responded, however, "that [defense counsel] may have made an improper argument in closing concerning the missing witness, the person, Warren, having never been searched." But he added that he was "hesitant to say that they cannot discuss Warren at all," remarking, "That does not seem right."

The trial judge responded that her "tentative thought" was that she wished "to make sure that the jury understands that the police may not search anyone unless they have probable cause to believe that the person has committed a crime." She proposed that her supplemental instruction advise the jury that "[u]nder the law, the police may stop and search a person only if they have probable cause to believe that person is committing a crime. If you believe the police officers' testimony in this case, there was no basis for the police to believe Warren was ... committing a crime and therefore no lawful basis for the police to stop and search Warren." The judge stated that she "wished to convey both concepts to the jury," i.e., that it could consider the evidence concerning

Warren and the court's explanation regarding probable cause.

Defense counsel argued, in effect, that the judge's proposed instruction went beyond the scope of the question posed in the juror's note, which was whether the jury may consider Warren. She further contended that the proposed instruction lacked balance and unfairly emphasized the investigating officers' perspective. She suggested that it should also state what the jurors should do if they did not believe the officers. Unpersuaded by defense counsel's arguments, the judge delivered the following supplemental instruction:

> Some of the testimony made reference to the fact that Appellant may have been talking with another person when the police arrived and some of the testimony made reference to the fact that this person may have been named Warren. Under the law, the police may stop and search a person only if they have probable cause to believe that the person is committing a crime. If you believe the police officers' testimony in this case, there was no basis for the police to believe Warren was committing a crime. Therefore, no lawful basis for the police to stop and search him. You may consider all of the evidence that was presented. You may make all reasonable inferences from the evidence. But, you may not engage in unreasonable speculation. When I say you may consider all of the evidence, you may debate all of the evidence including any evidence involving this person named Warren.

Shortly after the jury resumed its deliberations, the court received a note from a juror inquiring as to whether the investigating officers were required to photograph the drugs at the crime scene. Over defense objection,[5] the judge gave the following supplemental instruction: "Under the law, I am not aware of any camera being required. But, you should consider all of the evidence that has been presented in this case and all of the instructions that I have given you." In her initial instruction to the jury, the trial judge had stated that reasonable doubt may be based "upon the evidence or the lack of evidence in the case."[6]

## II.

■■ "[T]he 'decision on what further instructions, if any, to give in response to a jury question lies within the sound discretion of the trial court.'" *Bouknight v. United States*, 641 A.2d 857, 860 (D.C. 1994) (quoting *Tyler v. United States*, 495 A.2d 1180, 1183 (D.C.1985)). However, "[w]hen a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946). "Coming as it does, in response to a specific request from a deliberating jury, '[a] supplemental charge must be viewed in a special light.'" *Davis v. United States*, 510 A.2d 1051, 1053 (D.C.1986) (quoting *Arroyo v. Jones*, 685 F.2d 35, 39 (2d Cir.1982), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982)). "[T]he trial judge must be

5. Defense counsel argued that no evidence had been presented to support the assertion that no such requirement existed. Based on her personal knowledge, however, the trial judge took judicial notice that there was no such requirement.

6. The judge received an additional note asking whether "the police [could] have questioned the man referred to as Warren as opposed to searching him." Appellant did not object to the supplemental jury instruction delivered by the trial court in response to that question, and does not challenge that instruction in this appeal.

especially alert not to send the jury back to resume deliberations having most recently heard supplemental instructions which are unbalanced." *Id.* (citing *United States v. Carter,* 491 F.2d 625, 633 (5th Cir.1974); *United States v. Sutherland,* 428 F.2d 1152, 1157 (5th Cir.1970)). In *Coreas v. United States,* 565 A.2d 594, 599 (D.C.1989), we elaborated on our words in *Davis,* stating, "We reemphasize ... that when the trial court gives supplemental jury instructions it should seek not only to respond to the jury's request as the court in its discretion sees fit, but it should do so in a manner that does not unduly emphasize one aspect of the case."

Appellant argues before us that the trial court should have answered with a simple "yes" the jury's question whether it could consider and discuss Warren. Instead, argues appellant, the trial court gave a response that was not only extraneous to the question and argumentative in the prosecution's favor, but was also skewed in two ways: First, it omitted reference to facts favorable to the defense, while focusing on one piece of evidence favorable to the government—that the police did not see Warren do anything that warranted a stop or search. Second, it set forth one pro-government consideration—that the police should not be faulted for not investigating Warren. The government argues in response that the trial court's supplemental instruction was balanced, as the advice that the jury could consider the evidence concerning Warren set forth the defense position on that point, and the advice that, if the jurors believed the testimony of the officers, there was no lawful basis to stop or search Warren, set forth the government position on that issue.

We cannot agree with the government that the supplemental instruction was balanced. The evidence regarding Warren obviously could be considered by the jury. The government acknowledged as much during the colloquy about the jury note. Clearly, the defense was entitled to an instruction to that effect.[7] Although it is true that such an instruction deals with evidence helpful to the defense, and upon which the defense relied in its closing argument, it cannot be considered slanted in favor of the defense because it states a basic proposition about which there can be no disagreement. *See United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982) (holding that jury instruction "simply defin[ing] possession ... was favorable neither to the government nor to [defendants]").

■ As pointed out above, we have frequently recognized that the trial judge has considerable discretion in the matter of jury instructions, *see, e.g., Fearwell v. United States,* 886 A.2d 95, 101 (D.C.2005); *Byrd v. United States,* 870 A.2d 71, 73 (D.C.2005), and in responding to jurors' questions. *See, e.g., Bouknight, supra,* 641 A.2d at 860; *Coreas, supra,* 565 A.2d at 599; *Davis, supra,* 510 A.2d at 1052–53. We have also pointed out, however, that a supplemental charge given in response to a question from a deliberating jury must be viewed in a special light. *Davis, supra,* 510 A.2d at 1053. Such instructions must "not unduly emphasize one aspect of the case." *Coreas, supra,* 565 A.2d at 599. We do not suggest that a trial judge, in the exercise of her discretion, may not go beyond a simple and correct answer to the jury's question. When a judge does so,

7. *See Winfield v. United States,* 676 A.2d 1, 4 (D.C.1996) (en banc) (To present a third-party perpetrator defense, defendant need only present some "proof of facts or circumstances which tend to indicate some reasonable possibility that a person other than the defendant committed the charged offense.") (Citation omitted). Here, appellant clearly met that burden.

however, special care must be taken to assure that the instruction is fairly balanced, and does not single out one aspect of the case.

We have observed that the subject of the note was evidence favorable to the defense. In *United States v. Carter*, 491 F.2d 625, 634 (5th Cir.1974), the Fifth Circuit stated that "when the jury requests further instructions on points which are favorable to the Government, the trial judge should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury." In fairness, this practice should cut both ways, i.e., where the supplemental instruction that is necessary to answer a jury question accurately deals with the evidence or other matters favorable to either side, it may be appropriate for the court to add something offsetting to the response that favors the other side.

But the portion of the supplemental instruction here that went beyond a simple correct answer presented only one aspect of the evaluation of the testimony of the police officers, and it strongly favored the prosecution. It was not tempered by any language that favored the defense and thus gave balance to the supplemental instruction as a whole. There was no reference to what should ensue if the jurors did not believe the officers, as defense counsel requested, nor was there a counterweight in the form of a reference to evidence or other matters favorable to the defense. As given, the supplemental instruction lacked the balance and even-handedness

that could have been afforded by granting, in some form, defense counsel's specific request or including some other consideration favorable to the defense. *Davis, supra*, 510 A.2d at 1053. We are constrained to hold that the supplemental instruction was erroneous.

■ Ultimately, however, we conclude that the trial court's error was harmless. *See Brooks v. United States*, 599 A.2d 1094, 1101–02 (D.C.1991) ("It is well settled that instructional error is subject to harmless error analysis.") (Citations omitted.) The government's case was strong; four witnesses testified to seeing appellant make at least one tossing motion immediately before the drugs landed on the ground. There was no evidence presented, moreover, that any of the witnesses ever observed Warren toss anything. In light of the strength of the government's case, we deem it highly unlikely that the jury would have returned a verdict of not guilty even if its consideration of the evidence concerning Warren had been the subject of a properly balanced jury instruction. In short, we are "satisfied 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Id.* at 1102 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (further citation omitted).[8]

### III.

■ The government concedes that, in light of our holding in *Brown v. United*

---

8. Appellant, relying upon *Pope v. Illinois*, 481 U.S. 497, 501–04, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), and *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), maintains that the "*Chapman* harmless-beyond-a-reasonable-doubt standard applies" because the "court's instruction was error of constitutional dimension." *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17

L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). This argument is unpersuasive. In both *Pope* and *Rose*, the trial court, through its instructions, explicitly directed the jury to apply an unconstitutional standard in determining whether to convict. *See Pope, supra*, 481 U.S.

*States,* 881 A.2d 586 (D.C.2005), decided after appellant's conviction, it was error for the trial court to instruct the jury that the investigating officers were not required to photograph the controlled substances at the crime scene. The government argues, however, that the trial court's error was harmless. We agree with both propositions.

In *Brown,* we found that the trial court erred when it instructed the jury that, "as a matter of law, the government was under no ... obligation" to "photograph or videotape ... alleged drug activity or to take fingerprints," because the government presented no evidence that such requirements did not exist. 881 A.2d at 594–95. We concluded, however, that the trial court's error was · harmless, because "defense counsel was able to argue that the lack of corroborative evidence weakened the government's case"; the prosecutor never suggested "in closing argument that it had no duty to collect corroborative evidence"; and "the government's case against Brown was strong." *Id.* at 595.

Here, during her closing argument, defense counsel asserted that the government's failure to present corroborative evidence, such as fingerprints and photographs, weakened the government's case. The government never undermined this assertion by maintaining in its own closing argument that the police "had no duty to collect corroborative evidence." *Id.* at 595. Unlike the trial judge in *Brown,* moreover, the judge presiding over appellant's trial advised the jury in her initial instructions that reasonable doubt may be based "upon the evidence or the lack of evidence in the case." Later, when the judge delivered her supplemental instruction on photographic evidence, she reminded the jury to "consider all of the evidence that has been presented in this case and all of the instructions that I have given you."

We find that in the present case, which was tried before our decision in *Brown,* the trial court erred in instructing the jury that the police were not required to photograph the drugs at the crime scene, because the government presented no evidence that such a requirement did not exist. *See Brown, supra,* 881 A.2d at 594–95. We conclude, however, that in light of the above recited facts and the strength of the government's case, the trial court's error was harmless. *See id.* at 595 (citing *McFerguson v. United States,* 870 A.2d 1199, 1205 (D.C.2005); *Kotteakos, supra,* 328 U.S. at 750, 765, 66 S.Ct. 1239). We further conclude that the aggregation of the trial court's two instructional errors was harmless as well.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

*So ordered.*

at 497, 499, 501–04, 107 S.Ct. 1918 (applying *Chapman* standard where trial court, in obscenity trial, instructed jury to judge the value of the allegedly obscene materials based on community standards rather than objective standards); *Clark, supra,* 478 U.S. at 574, 579–580, 106 S.Ct. 3101 (applying *Chapman* standard to jury instruction that shifted burden of proof by applying rebuttable presumption of malice in homicide case). Here, the challenged instruction did not ask the jury to apply an unconstitutional standard. Furthermore, although appellant contends that the court's instructions "violated his constitutional rights under the Sixth Amendment," by impermissibly limiting his right to present a third-party perpetrator defense, the record establishes that the court permitted defense counsel to present evidence that a third party may have possessed the drugs and to argue in closing that that evidence created a reasonable doubt.