**HALL v. UNITED STATES.**

No. 9821.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 21, 1948.

Decided Dec. 20, 1948.

Mr. Scotti Mayo, of the Bar of the United States District Court for the District of Columbia, pro hac vice, by special leave of Court, and Mr. Benjamin Rhoden Coward, of Washington D. C., for appellant.

Mr. Stafford R. Grady, Assistant United States Attorney, of Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and John D. Lane, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

348

Before PRETTYMAN and PROCTOR, Circuit Judges, and BAILEY, District Judge, sitting by designation.

PROCTOR, Circuit Judge.

■ Appellant was tried in the District Court upon an indictment charging carnal knowledge of a female child of the age of eight years, in violation of Title 22, Section 2801, District of Columbia Code (1940), which reads as follows:

"Whoever has carnal knowledge of a female forcibly and against her will, or carnally knows and abuses a female child under sixteen years of age, shall be imprisoned for not more than thirty years: *Provided,* That in any case of rape the jury may add to their verdict, if it be guilty, the words 'with the death penalty,' in which case the punishment shall be death by electrocution: *Provided further,* That if the jury fail to agree as to the punishment the verdict of guilty shall be received and the punishment shall be imprisonment as provided in this section."

Carnal knowledge of a female under the age of consent is rape. The law conclusively presumes force. Sanselo v. United States, 44 App.D.C. 508.

In addition to proof of essential facts, the Government's evidence tended to show actual force and violence to suppress the child's outcries and resistance. The defendant testified in his own behalf. He admitted carnal abuse of the girl. Then, by way of mitigation, he stated details which tended to deny or minimize the force and violence shown by the Government's evidence, and to attribute his attack to drunkenness.

Upon cross-examination by the assistant district attorney the following occurred:

"Q. You are the same John Henry Hall who was convicted here on May 9th, 1947, for carnal knowledge, are you not? A. Yes, and I got 30 years.

"Q. In other words—A. That is exactly right.

"Q. You are a sex fiend, are you not? A. No sir, that is not my line.

"Mr. Mayo. I object to that.

"The Court. Very well. We will strike that, ladies and gentlemen of the jury; it is a question of whether he was convicted, and he said he was."

This appeal stems from the prosecutor's reference to the former conviction and insinuation that defendant was a sex fiend. For consideration of the matter in its full setting we refer to other parts of the record.

Upon redirect examination, the following occurred:

"Q. Jones," (John) "You have been in trouble a lot of times, haven't you? A. Yes, I have; lots of times.

"Q. And each time you have been in trouble, hasn't it resulted from your drinking? A. Yes, sir, that is true.

"Q. And you had been drinking that day? A. Yes, sir, I had been drinking that day."

Upon recross-examination, the defendant was asked, "Were you drinking when you attacked this other girl for which you were sentenced?" to which he replied, "No, sir, I was not at that time."

The arguments resolved themselves into pleas by the prosecutor for the jury to add the death penalty to a verdict of guilty and by the defendant's attorney to spare the defendant's life. In view of his admissions that was the only real question before the jury. The court in its charge referred to the previous conviction and stated as follows:

"That is not evidence in this case, or proof of the guilt or innocence of the defendant. That merely is introduced for the purpose of having you consider it in connection with the credibility which you will attach to the testimony of the defendant."

There were no prayers for instruction and no objections to the charge of the court.

In the course of their deliberations, the jury made the following inquiry of the judge:

"Your Honor, the jury wishes to be charged with the following information: It is unanimous among the jurors that this

man shall never be set free on society. Will he be given a life sentence if found guilty on Count 2?"

Admittedly the reference to "Count 2" meant an alternative verdict of guilty *without the death sentence,* which had been dealt with by the court in its charge to the jury. With approval of both sides the court replied to the jury as follows:

"The maximum sentence the Court may impose is 10 to 30 years. The matter of punishment, should you find the defendant guilty, is for the Court except for the right of the jury to impose the death sentence under the first possible verdict referred to in the Court's charge, if you so conclude."

Finally the jury returned a verdict of "guilty with the death penalty." Judgment was rendered accordingly.

A two-fold contention is made in appellant's behalf. First: The question of the prosecutor's eliciting a former conviction of carnal knowledge was objectionable because the admission by defendant of his guilt left no ground for impugning the credibility of his testimony. Second: The implied coupling by the prosecutor of the former offense with the present one to characterize the defendant as a sex fiend was prejudicial and could not be cured by the court's action with reference thereto. Presumably counsel was not so impressed at the time, for he took no action then or later in the trial suggestive of any criticism of the court's treatment of the matter. Yet, in view of the grave import of the case, we deem it our duty to consider the question without regard to any omission of counsel.

 The remark of the prosecutor was improper. Cross-examination is no place for argument or vituperation; nor could the former offense be used for any other purpose than to reflect upon the credibility of appellant's testimony. Bostic v. United States, 1937, 68 App.D.C. 167, 168, 94 F.2d 636; Goode v. United States, 1945, 80 U.S.App.D.C. 67, 68, 149 F.2d 377. For that single purpose the situation warranted a reference to the conviction. True, appellant's testimony did amount to an admission of essential facts, with a guilty

verdict the likely result. Then, practically speaking, there remained for the jury's determination only the question of assessing the death penalty. Appellant's testimony could have been offered only with a hope of palliating the offense in the minds of the jurors and thus avoiding the extreme penalty. His statement of the incidents differed in some respects from those shown by the Government. It softened somewhat the harsh picture of violence and injected by way of excuse a drunken condition as incitement for the crime. He sought the jury's credence. Hence it was proper to reveal the prior offense for its bearing upon his credibility. The fact that it was similar to the one for which he was then on trial could not affect admissibility at all.

 Counsel seek now to tie into the incident a later one where the prosecutor asked appellant if he had been drinking when the attack on the other girl occurred. It is argued that this was a deliberate aggravation of the earlier reference to the man as a sex fiend. We think the question was proper. It was prompted by appellant's answer to his own attorney that he had been in trouble often and each time drink was the cause. That testimony invited the prosecutor's inquiry as to whether he was drinking when the other offense occurred. The question being proper no wrong can be ascribed to it. Our consideration therefore must be confined to the single incident.

 Did the prosecutor's characterization of appellant as a sex fiend during his cross-examination militate against a fair trial? We think not, for several reasons. The judge promptly sustained objection to the remark, struck it, and informed the jury that the only question was as to the conviction. Later, in his charge the judge explained to the jury the limited consideration they should give to the prior conviction. Nothing suggests that the jury did not understand and respect the action and instructions of the court. We think, unless the contrary appears, or the circumstances are very unusual, that jurors should be presumed to have understood and followed the court's instructions. Landay v. United States, 6 Cir., 1939, 108

F.2d 698, 707, certiorari denied, 309 U.S. 681, 60 S.Ct. 721, 84 L.Ed. 1024; Parmagini v. United States, 9 Cir., 1930, 42 F.2d 721. We also think that they must be credited with enough common sense and discrimination to enable them to evaluate properly conduct and remarks of counsel even when they offend ordinary standards of propriety. United States v. Goodman, 7 Cir., 1940, 110 F.2d 390; Nye & Nissen v United States, 9 Cir., 1948, 168 F.2d 846. Moreover the question before us was considered by the trial judge upon a motion for a new trial. Much reliance should be placed upon his judgment of the matter. As stated in the Goodman case, supra, 110 F.2d at page 394:

"It is peculiarly within the knowledge of the trial judge whether remarks of counsel during the trial tend to prejudice the cause of a party. The courtroom atmosphere, prior remarks which have provoked the questioned statements, and other factors which cannot be appraised by a reviewing court may render remarks of counsel innocuous, although they may appear viciously prejudicial when removed from their setting."

The objectionable remark was made under conditions which we think nullified any harm that might have resulted in different circumstances. The rape of a little girl, with all its horrible details,—even as recited by the accused, must inevitably be regarded as a sexual crime of fiendish depravity. It would challenge our imagination to suppose that any group of persons, or any jury, with ordinary standards of decency could escape such an impression. Granting that the statement was improper, it seems fair to assume that any ill effects had been discounted and neutralized by the horrible incidents of the crime as they had been portrayed to the jury.

Finally, it seems clear to us that the inquiry made by the jury negatives any idea that they were swayed by passion or prejudice. Their note to the judge suggests calm and dispassionate deliberation leading them to a verdict amply justified by the facts.

In Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, at page 1246, 90 L.Ed. 1557, the Supreme Court, in dealing with the effect of evidence erroneously admitted, says, "In the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of stare decisis by what has been done in similar situations." and, 328 U.S. at page 764, 66 S.Ct. at page 1248, "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand * * * *"

Careful consideration of the entire proceedings convinces us that the improper remark of Government counsel had no material effect. Our views meet the test laid down in the Kotteakos case, 328 U.S. at page 765, 66 S.Ct. 1239. We can say "with fair assurance, after pondering all that happened *without stripping the erroneous action from the whole*," [1] that the verdict of the jury was not substantially swayed by the objectionable incident. Therefore the judgment must stand.

Affirmed.