Nathaniel V. BURKLEY, a/k/a Vincent
N. Burkley, Appellant,

v.

UNITED STATES, Appellee.

No. 10661.

District of Columbia Court of Appeals.

Argued Jan. 12, 1977.

Decided May 6, 1977.

William Nicoson, Washington, D.C., appointed by this court, for appellant.

Neil A. Kaplan, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Albert H. Turkus and Harry R. Benner, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, YEAGLEY, Associate Judge, and HOOD, Chief Judge, Retired.*

HOOD, Chief Judge, Retired:

Appellant was convicted after a trial by jury of armed robbery in violation of D.C. Code 1973, §§ 22–2901, 22–3202. The issue presented on appeal is whether the trial court erred in permitting the prosecutor to bring to the attention of the jury an alleged accomplice's refusal to testify. We affirm.

At approximately 8:30 p.m. on February 27, 1975, several men robbed a Safeway store. The robbers fled from the scene in a car driven by Earl Owens with a police cruiser in close pursuit. Owens and a passenger were apprehended when the getaway vehicle was abandoned. A third accomplice escaped on foot. Subsequently, a warrant was issued for appellant's arrest. Appellant, after learning this fact, turned himself over to the Metropolitan Police.

At trial, appellant was identified by two Safeway employees as being one of the gunmen who robbed the store. Furthermore, his jacket, some personal papers, and a package of cigarettes with his fingerprints were found in the getaway car.

Appellant relied on an alibi defense that was supported by his father and one other witness. He also claimed that Owens had given him a ride earlier in the day, and that he must have left the incriminating evidence in the car at that time.

The prosecutor, during his opening statement, said that Owens, who had already been convicted and sentenced for the crime, would testify regarding appellant's participation in the incident. The record reveals that Owens vacillated several times over whether he would answer questions if called to the stand. Counsel for appellant indicated to the trial court that if Owens did not testify this fact would be pointed out during appellant's summation argument. Owens was then called and refused to answer all substantive questions, even when directed to answer by the trial judge.[1] The court immediately cautioned the jury to draw no inferences adverse to appellant from Owens' refusal to testify, and included a similar charge in its formal instructions to the jury at the culmination of the trial.

During summation, appellant's counsel dwelt at length on the failure of Owens to testify and charged that the prosecutor had "fallen flat on his face." The prosecutor also alluded to Owens' failure to testify in his closing and rebuttal argument.[2]

> And if I said to you that Mr. Owens was going to testify in a certain way, and he didn't, is that because I was lying to you, or that I wanted to put myself in a position of promising evidence that I could not deliver?
>
> Or didn't Mr. Owens tell you that he wasn't going to testify, no matter if I asked him to, no matter if the Judge ordered him to; he refused to testify.
>
> Now, you remember Mr. Owens did say he was a prisoner in Federal Corrections Institute in Ashland, Kentucky.
>
> You ask yourself if you can think of any reason why he didn't testify in this case. [Tr. at 336–37.]

---

* This case was originally heard before Newman, Chief Judge, and Fickling and Yeagley, Associate Judges. Judge Fickling died on March 6, 1977, and by order of court of March 18, 1977, Hood, Chief Judge, Retired, was substituted in his place.

1. Owens was subsequently given a 6-month sentence for contempt to run consecutive to the sentence he was then serving for the robbery.

2. The prosecutor, in rebuttal, said:
   Well, I'm not a magician; and you saw the Court order Mr. Owens to testify, and you know the Court has a lot of power. When you get a court order, most people jump.

Appellant contends that Owens' refusal to testify, coupled with the prosecutor's statements, invited the jury to draw inferences as to appellant's part in the crime that could not be countered by cross-examination of the witness, and that appellant was therefore deprived of his Sixth Amendment right of confrontation. In support of this contention, appellant relies principally on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).[3]

The prejudice to the defendant of statements placed before the jury which by their terms directly connect him with the crime (as in *Bruton* and *Douglas, supra*) is of a different order than the prejudice present in the case at bar. Here the risk is not that the jury will misuse evidence which directly states that the defendant is the criminal, but rather that the jury will make improper inferences from the mere refusal of the witness to testify at all. Here, unlike *Bruton* and *Douglas, supra*, the witness Owens has made no statement, written or oral, before the jury that directly implicates appellant.

■ In *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), the Supreme Court recognized that, in determining whether a defendant's substantial rights have been affected in circumstances similar to those present in the instant case, the courts "have looked to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error." 373 U.S. at 186, 83 S.Ct. at 1154. One of these grounds, the Supreme Court stated in *Namet*, relates to prosecutorial misconduct, and the other "seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id.* at 187, 83 S.Ct. at 1155. It is our view that the present case is one where the prejudice to appellant, if any, "constituted a mere minor lapse," *Douglas v. Alabama, supra*, 380 U.S. at 420, 85 S.Ct. 1074, which was not substantial enough to justify reversal. Indeed, only one of the questions which was asked concerned whether appellant was with Owens, and that question was not answered. Further, the evidence against appellant included two eyewitness identifications, his fingerprints found in the getaway vehicle and on the cigarette package plus the recovery from the vehicle of the coat appellant admitted wearing on the night of the robbery. While Owens' testimony would have been helpful, it was hardly a crucial link implicating appellant in the robbery.

■ We look next to the question of prosecutorial misconduct. The circumstances surrounding Owens' testimony in the instant case are unlike the situation where a prosecutor, knowing a witness will refuse to answer, persists in calling the witness in order to have the jury hear his refusal to answer. *See Fletcher v. United States*, 118 U.S.App.D.C. 137, 332 F.2d 724 (1964); *Sanders v. United States*, 373 F.2d 735 (9th Cir. 1967); *United States v. Maloney*, 262 F.2d 535 (2d Cir. 1959). Here, even after consulting with his own counsel, Owens answered some questions addressed to him, and refused to answer others. There is no basis for concluding the prosecutor knew with any certainty, prior to the witness' appearance on the stand, that he would be a hostile witness. The prosecutor had no way of knowing to which questions the witness would respond. In handling a difficult witness who after consulting with counsel, vacillates between hostility and cooperation, a prosecutor's "minor lapses through a long

---

**3.** *Bruton* dealt with a confession of one defendant admitted into evidence against himself and a co-defendant during a joint trial. The Court there held that the jury could not effectively perform the mental gymnastics required to use the confession only against one defendant, even when so instructed.

*Douglas* involved the refusal of a prosecution witness and an alleged accomplice to testify. The prosecutor subsequently read the witness' entire out-of-court confession to him in front of the jury under the guise of asking the witness if he had, indeed, made the statement.

trial" are somewhat understandable and not such errors as should be regarded as constitutional deprivations of appellant's fundamental rights to a fair trial. *United States v. Hiss*, 185 F.2d 822 (2d Cir. 1950).

■ Even assuming *arguendo* the prosecutor persisted in questioning Owens in the face of consistent refusals to answer, such questioning would not assume constitutional dimensions. In *Namet v. United States, supra*, the Supreme Court pointed out that a prosecutor's questions to two witnesses, which he knew would not be answered on self-incrimination grounds, did not present "constitutional issues of any kind." 373 U.S. at 185, 83 S.Ct. 1151. Hence, if the prosecutor committed error at all, it was harmless. *See* Super.Ct.Cr.R. 52(a).

■ We also perceive no impropriety in the handling of the problem by the trial judge. The court's duty is to secure the witness' testimony if compellable, and to give appropriate curative instructions to the jury, if necessary, to restore order in the trial. *Frazier v. Cupp*, 394 U.S. 731, 735–36, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Carsey v. United States*, 129 U.S.App.D.C. 205, 207, 392 F.2d 810, 812 (1967).

■ In the case at bar, the trial judge, out of the jury's presence, warned Mr. Owens of the consequences of the course he was taking, and adjudged him in contempt when he persisted. The judge also instructed the jury not to draw any inference of any kind from either Mr. Owens' recalcitrance or the prosecutor's questions. There is respectable authority which holds a cautionary admonition by a trial judge to the jury can cure error which might otherwise be prejudicial to a defendant. *See, e. g., Frazier v. Cupp, supra*, 394 U.S. at 735, 89 S.Ct. 1420; *Carsey v. United States, supra*, 129 U.S.App.D.C. at 207, 392 F.2d at 812; *United States v. Reincke*, 354 F.2d 418, 420–21 (2d Cir. 1965); *United States v. Maloney, supra* at 538.

■ Next, we examine appellant's assignment of error regarding the prosecutor's opening statement. The Supreme Court has held that a defendant is not denied his constitutional right of confrontation when a prosecutor's opening statement summarizes the testimony he expects to receive from a co-defendant who has pleaded guilty and who when called to the stand, refuses to testify. *Frazier v. Cupp, supra*. The Court reasoned:

> [H]ere we have no more than an objective summary of evidence [during an opening statement] which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. [*Id.*, 394 U.S. at 736, 89 S.Ct. at 1423.]

In the instant case, the trial court in its final instructions cautioned the jury not to consider any references made by the prosecutor as to what Mr. Owens would testify. We presume, unless the contrary appears, that the jury understood and followed the court's instructions. *Hall v. United States*, 84 U.S.App.D.C. 209, 211, 171 F.2d 347, 349 (1948). Here, there was nothing to suggest that the jury did not comprehend and respect the admonitions of the trial court.

■ Finally, we consider the propriety of the prosecutor's rebuttal argument. "It is generally held that whether improper conduct of Government counsel amounts to prejudicial error depends, in good part, on the relative strength of the Government's evidence of guilt." *Smith v. United States*, D.C.App., 315 A.2d 163, 167, *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), *quoting Jones v. United States*, 119 U.S.App.D.C. 213, 214 n.3, 338 F.2d 553, 554 n.3 (1964); *accord, Garris v. United States*, D.C.App., 295 A.2d 510, 512 (1972). The jury, in addition, "must be credited with enough common sense and discrimination to enable them to evaluate properly conduct and remarks of counsel even when they offend ordinary standards of propriety." *Hall v. United States, supra*, 84 U.S.App. D.C. at 212, 171 F.2d at 350. We observe

that the prosecutor's quoted rebuttal argument (*see* note 2 *supra*) was triggered by references to Owens' failure to testify made by appellant's counsel in his closing argument. These remarks were typical of unpleasantries exchanged by counsel for both sides in argument to the jury. *See James v. United States*, 89 U.S.App.D.C. 201, 191 F.2d 472 (1951), *cert. denied*, 342 U.S. 948, 72 S.Ct. 563, 96 L.Ed. 705 (1952). Thus, because of the strength of the government's case and because of the limiting instructions by the trial judge, we do not think the statements of the prosecutor reached the level of substantial prejudice.

*Affirmed.*