**Clarice BROWN, Personal Representative of the Estate of Katie M. Brown, Appellant,**

v.

**NATIONAL ACADEMY OF SCIENCES, Appellee.**

No. 02–CV–1121.

District of Columbia Court of Appeals.

Argued Sept. 11, 2003.

Decided March 11, 2004.

Helena D. Mizrahi, for appellant.

William F. Causey, with whom Audrey Byrd Mosley was on the brief, for appellee.

Before RUIZ and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior J.

Appellant, Ms. Katie M. Brown[1] filed suit against her former employer, the National Academy of Sciences (NAS), alleging that NAS had terminated her from her employment there and subsequently failed to offer her any of eight other positions at NAS for which she applied there, in violation of the District of Columbia Human Rights Act (DCHRA), D.C.Code § 1–2501 et seq. (1998). Ms. Brown's complaint and the pre-trial order stated that the alleged retaliatory termination and retaliatory failures to hire were all consequences of her having filed an internal equal employment opportunity (EEO) complaint with NAS asserting that she had been denied the vacation period of her choice because of her age, race, gender and national origin (Nicaraguan). The parties, however, tried the case as one in which plaintiff claimed that her termination and each of the eight failures to hire were the result of retaliation or, alternatively, the result of discrimination on one or more of the four above-stated bases.

At the first of two trials, Judge Judith E. Retchin granted the defendant's motion for judgment as a matter of law (JMOL) on all counts other than retaliatory termination, and one of the eight counts of discriminatory failure to hire (specifically for a travel services assistant position) prior to submitting the case to the jury.[2] The jury found in Ms. Brown's favor on the retaliatory termination count, and on it awarded damages in the amount of $110,000. The jury also found in her favor on discriminatory failure to hire for a travel services assistant position on the basis of her age, but not on the bases of gender, race, or national origin, and awarded no damages on that count. After trial, the judge granted NAS judgment as a matter of law on the discriminatory failure to hire count, and a new trial on the retaliatory termination count. A second trial, before Judge Herbert B. Dixon, Jr., resulted in judgment as a matter of law in favor of NAS on the retaliatory termination count as well. Before this court, appellant argues primarily that the JMOLs were erroneously entered in light of the evidence presented, and that the first trial judge committed abuses of discretion that require reversal. We affirm.

1. Ms. Katie M. Brown took part as plaintiff during the two trials discussed infra. During the pendency of this appeal, Ms. Brown died. Her daughter, Clarice Brown, has been substituted as appellant in this appeal in her capacity as personal representative of the estate of Katie M. Brown. All references to "Ms. Brown" are to the decedent, Katie M. Brown, unless otherwise indicated.

2. The amendments to Rule 50 of the Federal Rules of Civil Procedure, adopted in 1991, and incorporated in their entirety into Super Ct. Civ. R. 50, changed the terminology for the motion for a directed verdict and the motion for a judgment notwithstanding the verdict. What was formerly termed a directed verdict is now called a judgment as matter of law. What was formerly termed a judgment notwithstanding the verdict is also now called a judgment as a matter of law.

### I.

On June 1, 1967, the National Research Council, a branch of NAS, hired Ms. Brown as a keypunch trainee. From that day forward, Ms. Brown was employed continuously by NAS until her termination in July 1994. On May 2, 1994, NAS advised Ms. Brown that she was being terminated because her position was being abolished. The effective date of the termination was July 1, 1994.

During May 1993, Ms. Brown had made a request for five days of annual leave, to be taken from July 19 until July 23, 1993. In response to this leave request, Ms. Brown's immediate supervisor, Montra Newton, informed her that the particular week she requested was not suitable because the department was already going to be "short-staffed" that week. Ms. Newton suggested that Ms. Brown take leave during a different week.

On July 20, 1993, Ms. Brown sent a letter to the supervisor of her unit, Tim Roddy, alleging that her leave request had been denied because of her age, race, gender and national origin.[3] She sent copies of this letter to five persons at NAS who held administrative or supervisory positions, including Charles Starliper, NAS director of personnel, and Michael Biela, NAS comptroller. Mr. Roddy responded in writing to the letter, explaining that shortly after Ms. Brown made her leave request, her supervisor, Ms. Newton, informed her that the particular period of leave she had asked for was not workable because one employee in her department had already requested leave during that week, two employees had recently been transferred from the office, and the department was moving to a different floor that week. Mr. Roddy's letter also stated that Ms. Brown had been told that either the week immediately before or the week immediately after the week that she requested, or any week in August, would be a much better time for her to take leave. Mr. Roddy informed Ms. Brown that if she wished to pursue a discrimination claim, she should take it up with Christine McShane, NAS's equal employment opportunity ("EEO") officer.

Subsequently, Ms. Brown met with Ms. McShane and reiterated the allegations made in her letter. Ms. McShane informed Ms. Brown that she would investigate the matter. Three weeks later, on September 1, 1993, Ms. McShane sent Ms. Brown a letter indicating that her investigation did not reveal any evidence of discrimination, and concluding that the leave request had been handled in the proper manner.

On February 9, 1994, the NAS directors circulated a memo to all "unit heads" requesting budget submissions for the following fiscal year that reflected a ten-to-fifteen percent reduction in costs. In response to this directive, Shirley Roebuck and Tim Roddy, the supervisors of the Accounts Payable/Treasury Office of NAS (the department where Ms. Brown worked),[4] submitted a memo dated April 26, 1994, which recommended compressing the functions of five jobs in the department into four.[5] The memo concluded that Ms.

---

3. As of 1993, Montra Newton was Ms. Brown's immediate supervisor. Ms. Newton reported to Tim Roddy, so Mr. Roddy also exercised supervision over Ms. Brown.

4. During late 1993, NAS had restructured its accounting department. After the changes, Shirley Roebuck was Brown's immediate supervisor. Ms. Roebuck was not Ms. Brown's

supervisor from May 1993 to September 1993, the period at issue in the EEO complaint.

5. The individuals who were selected for the four remaining jobs were all African-Americans. One of the individuals was male, the

Brown did not possess a requisite skill set that would qualify her for any of the positions that would result from the reorganization of the department. Accordingly, the memo recommended that her employment be terminated.

On May 2, 1994, Ms. Brown was called into a meeting with Shirley Roebuck and Tim Roddy. At the meeting, she was given her termination letter, signed by Michael Biela, which stated that her employment was terminated, effective July 1, 1994.[6] The letter also mentioned the possibility of Ms. Brown's applying for other positions at NAS. Ms. Brown subsequently applied for eight different positions at NAS between July 1994 to January 1995. She was not hired for any of those jobs.

On June 27, 1995, Ms. Brown filed a complaint against NAS in the Superior Court of the District of Columbia, alleging numerous violations of the DCHRA. At the first trial, she contended that her termination at NAS was both retaliatory and discriminatory, and that each failure to hire her was likewise both retaliatory and discriminatory.

## II.

We will discuss first Ms. Brown's allegation that the termination of her employment at NAS was an act of discrimination taken against her because of her age, gender, race and national origin. At the close of the plaintiff's case at the first trial, the defendant moved for JMOL on all counts. The court granted JMOL against the plaintiff on the discriminatory (but not the retaliatory) termination claim, ruling that the claim had been filed outside the statute of limitations. A claim for employment discrimination filed under the DCHRA must be filed within one year after the date of the adverse employment action, or within one year after the time that the plaintiff knew or should have known that the employment action was undertaken for an unlawful purpose, D.C.Code § 1–2544(a) (1981), recodified as D.C.Code § 2–1403.16(a) (2001). We have strictly construed this one year limitation. "The [DCHRA] provides specific timetables . . . for filing a claim of discrimination: within one year of the alleged unlawful discriminatory practice or its discovery . . . a complainant, seeking damages or other appropriate relief, may file a complaint either with [the office of Human Rights] . . . or in any court of competent jurisdiction." *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C.1981).

"[W]e review the grant of a [judgment as a matter of law] *de novo*, applying the same standards as the trial court." *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 946 (D.C.2003), *accord Breezevale Ltd. v. Dickinson*, 759 A.2d 627, 633

three others were females. All of the individuals were younger than Ms. Brown.

6. The letter reads in pertinent part as follows:
 Dear Katie [Brown]:
 I regret to inform you that the Accounting Assistant position which you now hold is being abolished because of a restructuring of duties associated with the daily processing of vouchers and because of major reductions in institutional funding support for indirect activities . . .
 The termination of your employment is based on the elimination of the Accounting Assistant Data Entry Clerk position and fur-

ther reorganization of The Accounts/Payable Treasury Office. The Office of Personnel and Appointment will be able to assist you by making this fact known with regard to any future employment reference you may request and to assist you in considering any appropriate vacancies in the Academy complex. . . .
 If you are not selected for another position with the Academy, the Office of Personnel and Appointments will schedule an exit interview with you, at which time your final pay will be delivered to you . . .

(D.C.2000), *op. adopted,* 783 A.2d 573 (D.C. 2001) (en banc); *accord Durphy v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.;* 698 A.2d 459, 465 (D.C.1997). Judgment as a matter of law may be granted only if, when the evidence is viewed in the light most favorable to the opposing party, there is "no legally sufficient evidentiary basis for a reasonable jury to find" for the non-moving party. Super. Ct. Civ. R. 50(a). This is an exacting standard, and "it is only in the unusual case, in which only one conclusion could reasonably be drawn from the evidence, that the court may properly grant judgment [as a matter of law]." *Homan v. Goyal,* 711 A.2d 812, 817 (D.C.1998).

Our review of the record of the first trial reveals the following facts which are relevant to the issue of limitations regarding discriminatory termination.

1. On May 2, 1994 Ms. Brown was handed a termination letter, signed by Michael Biela, the comptroller of NAS, which stated that her employment at NAS was to terminate on July 1, 1994.

2. The termination letter stated that Ms. Brown was being terminated because of a reduction in force (RIF) which was necessary due to budget cuts at NAS.

3. The termination letter mentioned the possibility of Ms. Brown's applying for another position at NAS.

4. Ms. Brown testified that immediately upon receiving her notice of termination, she believed that she was being terminated because of her age, gender, national origin and race, and also because she had filed her July 1993 EEO complaint.

5. Ms. Brown testified that, despite what the termination letter said, she never believed there was a RIF.

6. Ms. Brown testified that nobody at NAS offered her assistance in trying to find another job there.

7. On June 27, 1995 Ms. Brown filed suit, alleging numerous violations of the DCHRA.

■ The Supreme Court has held that "the … discrimination occur[s]—and the filing limitations period therefore commenced—at the time the … decision [to terminate] was made and communicated to [the plaintiff]. That is so even though one of the *effects* of the [decision]—the eventual loss of a teaching position—did not occur until later." *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).[7] "As … noted in *Ricks,* [mere] continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Chardon v. Fernandez,* 454 U.S. 6, 9, 102 S.Ct. 28, 70 L.Ed.2d 6[sic] (1981) (quoting *Ricks, supra,* 449 U.S. at 257, 101 S.Ct. 498. This court has followed the holding of *Ricks* and *Chardon. See, e.g., Stephenson v. American Dental Ass'n,* 789 A.2d 1248, 1250 (D.C. 2002).

■ Appellant submits that the discovery rule should apply because Ms. Brown claimed she did not actually discover that the termination was an act of discrimination until February 1995, when she allegedly learned from Gwen Sanders, a supervisor in the NAS travel accounting department, that Shirley Roebuck had stated that she could not be hired for any job at NAS. We have held that "for a cause of action to accrue where the discov-

---

7. In *Ricks* the plaintiff was informed he would not be receiving tenure. The Supreme Court ruled that although he remained employed at the college for over a year after receiving this notice, the statute of limitations for alleged wrongful failure to award tenure began to run at the time of notice of the adverse decision.

ery rule is applicable, one must know (or by the exercise of reasonable diligence should know[)] (1) of the injury, (2) its cause in fact and (3) of some evidence of wrongdoing." *Bussineau v. President and Directors of Georgetown College*, 518 A.2d 423, 425 (D.C.1986). "Where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs, we apply a 'discovery rule' to determine when the statute of limitations commences." *Id.* 518 A.2d at 425; *accord Stager v. Schneider*, 494 A.2d 1307, 1316 (D.C.1985); *Kelton v. District of Columbia*, 413 A.2d 919, 921 (D.C.1980).

The facts in this case differ significantly from the facts in *Doe v. Medlantic Health Care Group, Inc., supra,* 814 A.2d at 939. Plaintiff Doe heard from a co-worker on April 25, 1995, that another co-worker was telling their co-workers about some embarrassing private information regarding Doe's medical status. Within a few days, Doe questioned the suspected perpetrator in private and then in the presence of the co-worker who originally told Doe about the matter. As a result of those conversations, Doe concluded that the original report was a joke by a co-worker known to be a jokester. It was not until May 20, 1995, when Doe observed the co-worker suspected of spreading the information attempt to silence the co-worker who originally reported the matter to Doe, that Doe concluded that the suspected perpetrator was source of the rumor and that she had access to his private medical information. The next day Doe telephoned the hospital that was responsible for safeguarding this information and confirmed his suspicion of wrongdoing. He filed suit one year later. This court held that the jury could have found that Doe was not required to investigate the matter more than he already had if it concluded that Doe reasonably believed until May 20, 1995, that the suspected perpetrator was not the source of the

information. By focusing on what Doe reasonably did or did not believe, this court was observing the teaching of *Hendel v. World Plan Exec. Council,* 705 A.2d 656, 661 (D.C.1997), that a plaintiff's actual or constructive knowledge of relevant facts must be assessed under a objective "reasonable person" standard.

■ In this case, Ms. Brown testified to her own immediate conclusion that her termination was discriminatory and retaliatory. She testified that she never accepted the employer's proffered reason for her termination—the RIF. Appellant's present assertion is that Ms. Brown did not "discover" the discrimination until February 1995, when she stated she heard that Shirley Roebuck had indicated that Ms. Brown could not be hired back at NAS. This assertion is conclusively contradicted by Ms. Brown's trial testimony that at the time she was given her termination letter on May 2, 1994, it was her conclusion that she was being terminated for impermissible discriminatory reasons.

We have held that "[t]he plaintiff is well-situated to discourse upon the scope of her knowledge concerning her cause of action." *Diamond v. Davis,* 680 A.2d 364, 379 (D.C. 1996). Accordingly, especially in the absence of countervailing evidence, it was appropriate for the trial court to rule against the plaintiff on this point on the basis of her own testimony concerning how she assessed the circumstances of her termination on May 2, 1994, and the undisputed facts surrounding her EEO complaint of discrimination on four stated bases. Thus, the cause of action arose on May 2, 1994, the day appellant was given her letter of termination, and over a year before she filed suit. Appellant failed to adduce substantial evidence supporting an argument that the statute of limitations commenced to run at a later date.

Accordingly, we conclude that the trial court properly granted judgment as a matter of law on the discriminatory termination count.[8] The trial court declined to grant judgment as a matter of law on retaliatory termination based on limitations. We will examine that issue below.

### III.

At the first trial, Ms. Brown raised eight separate counts of failure to hire involving eight different positions for which she applied. She raised two theories as to each failure. First, she alleged that each failure to hire her was an act of discrimination under the DCHRA based on her gender, age, national origin, and race; and, second, she alleged that each failure to hire her was an impermissible act of retaliation taken against her because she had filed an EEO complaint in July 1993.

At the close of plaintiff's case, NAS moved for judgment as a matter of law on all eight counts of failure to hire on both theories, retaliation and discrimination. The trial court ruled with respect to seven of those eight positions, *i.e.,* all of the positions other than the travel services assistant position, that Ms. Brown had failed to "put on evidence of who made the decision to hire, what it was based on, and whether it was for an impermissible purpose, and that [the person] who made the decision [not to hire] had knowledge of the EEO complaint." Accordingly, the trial court granted judgment as matter of law against Ms. Brown on both aspects of those seven counts.

■ Our *de novo* review of the record, see *Doe v. Medlantic Health Care Group,*

*Inc., supra,* 814 A.2d at 946, leads us to conclude that the trial court properly determined that there was a lack of any reliable evidence supporting Ms. Brown's contention regarding those counts. Ms. Brown's evidence was essentially that she applied for those jobs, and that each time another individual was hired instead. The record is bereft, however, of any showing of the required qualifications for those jobs such as educational level or particular skills. Furthermore, the record does not reflect who the respective decision makers were, whether the decision makers were aware of the EEO complaint, or the race, age, gender or national origin of those who were hired. This lack of relevant evidence is fatal. Accordingly, we affirm the judgments as a matter of law on those seven failures to hire.

The "eighth" position was a "travel services assistant position" for which Ms. Brown applied in January 1995. Ms. Brown argued that she was not selected for the travel services assistant position because of discrimination or, alternatively, in retaliation for having filed her July 1993 EEO complaint. During her case-in-chief, Ms. Brown's primary evidence was the testimony of Gwen Sanders, who stated that she had wished to hire Ms. Brown for the position, but was overruled by her supervisor, Shirley Roebuck. Ms. Sanders testified that she ordinarily would be in charge of doing the interviewing of applicants for positions immediately under her, but she conceded that her manager, Ms. Roebuck, was the "ultimate hiring official" for this particular position.

---

8. While the facts and circumstances of this case support the trial judge's decision to rule as a matter of law, our decision today does not derogate from the principle that we recently affirmed that "unless the evidence regarding the commencement of the running of the statute of limitations is so clear that the court can rule on the issue as a matter of law, the jury should decide the issue on appropriate instructions." *Lively v. Flexible Packaging Ass'n,* 830 A.2d 874, 892 fn. 29 (D.C.2003) (en banc).

At the close of the plaintiff's case, defendant moved for judgment as a matter of law on both aspects of this claim; retaliation and discrimination. The court granted judgment as a matter of law on the retaliation aspect, ruling that "no prima facie case on retaliation" had been presented by the plaintiff.

On the issue of retaliatory failure to hire, the trial court observed that the plaintiff established that Shirley Roebuck was the decision maker. The court stated, however, that "there was no evidence that the [person] making the hiring decision" knew about the EEO complaint. In argument before the trial judge, counsel for NAS stated correctly that there was no evidence that the EEO letter was in Ms. Brown's personnel file. While the trial court acknowledged that "circumstantial and indirect evidence was permissible", it concluded that Ms. Brown's assertion "that Shirley Roebuck knew [about the EEO complaint] through indirect evidence" was "not a fair inference from the evidence" adduced by Ms. Brown, and that such a finding "would be just rank speculation."

On review we agree that Ms. Brown's evidence on this point was not adequate to withstand the motion for JMOL. Ms. Roebuck was not called to the stand during the plaintiff's case and asked whether she knew of the EEO complaint at the time of the failure to hire,[9] nor was there any evidence whether record keeping at NAS would have called for the inclusion of EEO information in a file to which Ms. Roebuck would have had access. Ms. Brown acknowledged that she did not "know for a fact" whether the decision-maker knew about her EEO complaint. Although appellant's counsel did not mention it in resisting the motion for JMOL or in her brief on this issue, we note that there was a somewhat ambiguous response by Ms. Brown on cross-examination that appeared to indicate that she mentioned the EEO complaint in the meeting at which she was notified of her termination.[10] This response, not explored by either counsel, does not add enough information to create a fact issue regarding Ms. Roebuck's knowledge when the hiring decision was made 18 months later. Accordingly, we hold that the judgment as a matter of law was properly granted on the retaliation aspect of the claim involving failure to hire for the travel services assistant position.

On the discrimination aspect of the claim for failure to hire Ms. Brown for that position, the defense conceded that Ms. Brown had at least put on evidence which indicated that she belonged to a protected class, that she applied for a particular job; and that someone else was hired for the job. The trial court ruled that this was

---

9. Ms. Roebuck was later called to the stand during the defense case after JMOL was granted on this count and testified that she did not learn about Ms. Brown's EEO complaint until she was preparing for the first trial.

10. When Ms. Brown was asked on cross-examination whether she had stated at the meeting at which she was told of her termination that she was "being fired because she was being discriminated against," she replied "[b]ecause of that letter" and added "the EEO complaint." This reply is somewhat ambiguous in that it is not clear whether she spoke the words "EEO complaint" aloud at the meeting or used them only to explain her response to "that letter." When immediately asked what she thought the reason was for discrimination, she answered "because of my age ... and race." Ms. Brown's attorney did not refer to this response in opposing appellee's motion for JMOL even when the trail court asked her what evidence she had on this point. The trial court found the testimony of Ms. Brown ambiguous and therefore declined to grant defendant's motion for JMOL as to another count, retaliatory termination, on limitations grounds based on Ms. Brown's response.

sufficient to make out a prima facie case, and thus the claim for discriminatory failure to hire for the travel services assistant position remained before the jury after the close of the plaintiff's case.

Called as a witness by NAS, Ms. Roebuck testified that while Ms. Brown had a long history of employment at NAS, she lacked the necessary educational training and relevant experience in travel accounting required by the travel services assistant position. Ms. Roebuck also stated that she recommended hiring James Henson for the position because he had the training, education and substantial relevant experience. Additionally, Ms. Roebuck stated that the position was in the department she supervised, and that she was the hiring official for the position, which contradicted the theory, unsubstantiated by any evidence, that she improperly inserted herself into the hiring process. During cross-examination of Ms. Roebuck, counsel for Ms. Brown did not attempt to call into question her statement that she was the hiring official for the travel services position.

At the close of all of the evidence, appellee moved again for judgment as matter of law on the age discrimination aspect of the claim for failure to hire for the travel services assistant position. Defendant argued that the plaintiff had failed to offer any evidence that related to the age of Mr. Henson, the individual eventually hired for the travel services assistant position.[11] The court declined to grant a judgment as a matter of law at the close of all of the evidence on this issue, noting that Ms. Brown had submitted evidence that showed that Mr. Henson was eight years younger than Ms. Brown.

The jury returned a verdict in Ms. Brown's favor on this count, finding that NAS impermissibly discriminated against her on the basis of her age in failing to hire her for the travel services assistant position (but did not so find on the bases of race, gender or national origin). After verdict, NAS renewed its motion for a judgment as matter of law, pursuant to Super. Ct. Civ. R. 50(b). The court granted the renewed motion, ruling that appellant had failed to make a *prima facie* showing that she had been discriminated against because of age.

We review this ruling *de novo*, applying the same standard as the trial court, regardless of whether it was entered before or after a jury verdict, *Doe v. Medlantic Health Care Group, Inc., supra,* 814 A.2d at 946.

It is our task to consider all the relevant evidence and to determine whether Ms. Brown offered evidence which, viewed in the light most favorable to her, was sufficient to permit a juror to reach a conclusion in her favor. Appellants "must be afforded every reasonable inference, but [will] not [be] entitled to inferences based on guess or speculation." *Rule v. Bennett,* 219 A.2d 491, 494 (D.C.1966).

The evidence appellant introduced at trial to establish age discrimination was:

1. NAS posted a position for a travel services assistant. The job posting said that the academy was seeking an applicant with "business college/A.A. degree/technical school/partial completion of B.A./ B.S. course work" and "two or more years of college level course work, preferably in accounting." The job posting also noted that the position re-

---

11. NAS did not renew its motion for a judgment as a matter of law with regard to the three theories of race, gender, and national origin discrimination in the failure to hire for

the travel service assistant claim. These claims all went to the jury, along with the age discrimination claim.

quired that the individual be able to perform voucher maintenance, audit travel vouchers for payment, reconcile direct bill expenses and collect data to be used in proposal and cost analysis

2. Ms. Brown, then fifty-three years old, applied for the travel services assistant position.

3. Ms. Brown did not have any of the specifically required educational qualifications. Ms. Brown admitted that she did not have specific experience performing voucher maintenance, and auditing travel expenses. Ms. Brown had twenty-seven years of experience in the treasury department of NAS. Her primary functions were performing data entry and serving as a "checkwriter."

4. James Henson, a forty-five-year-old male, was hired for the position in question. Mr. Henson had the required educational background, and also had considerable experience in travel accounting with Delta Airlines.

■ In order to set forth a *prima facie* case, Ms. Brown had to satisfy a four-part test by showing (1) that she belonged to a protected class; (2) that she was qualified for the position she applied for; (3) that her failure to be hired occurred despite her employment qualifications; and (4) that the decision not to hire her was based on the characteristic that placed her in the protected class. *See Blackman v. Visiting Nurses Ass'n,* 694 A.2d 865, 868–69 (D.C. 1997).

■ With regard to the first part of the test, Ms. Brown asserted that she was in a protected class because she was eight years older than the applicant eventually hired.[12] While it is questionable whether such evidence was sufficient to satisfy her burden on that element, we need not reach that question as appellant failed to satisfy all remaining parts of the test. Ms. Brown failed to show that she could satisfy the posted requirements for the job. Most important, she was not able to show that she had the required education or the relevant experience. The burden of proving that she was qualified is an affirmative "burden [that] cannot be successfully carried by speculation." *Myrick, supra,* 268 A.2d at 527. We conclude that Brown's contention that her 27 years of experience at the NAS qualified her for the travel services assistant position fails to rise above the level of mere argument, as the posting was quite specific with regard to the relevant education and experience required and Ms. Brown did not present evidence challenging that the requirements were bona fide. Finally, Ms. Roebuck testified that Mr. Henson was hired solely on the basis of his qualifications and long history of relevant employment experience, and that she was not even aware of Mr. Henson's age when the hiring decision was made. Ms. Brown failed to offer any evidence that disputed Ms. Roebuck's testimony. She therefore failed to meet the fourth part of the test as well.

**12.** The District of Columbia Human Rights Act ("DCHRA") provides in pertinent part that:

> (a) *General.* It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race ... [or] age ... of any individual:
> (1) *By an employer.* To ... discharge, any individual; or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment ... or to limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.
> D.C.Code § 1–2512(a) (1999 Repl.) (now codified at D.C.Code § 2–1402.11(a) (2001))

Because Ms. Brown failed to make out a *prima facie* case that NAS declined to hire her for the travel services position because of her age, we conclude that the trial court correctly entered judgment as matter of law against her on that count.

## IV.

On the issue of retaliatory termination, the jury in the first trial returned a verdict in Ms. Brown's favor, finding that the termination was a retaliatory action taken against Ms. Brown because she filed an EEO complaint nine months before. The trial court denied defendant's post trial motion for JMOL, but vacated the jury verdict and ordered a new trial on this issue. The court stated that it "could not say that the jury was not influenced by the dismissed claims or by sympathy for plaintiff based on conduct of her counsel, especially in light of the weakness of plaintiff's evidence."

■ We have recognized that pursuant to Superior Court Rule of Civil Procedure 59, the trial court is empowered to grant a new trial when such action is needed to "prevent injustice." *Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 327 (D.C.1984). "Our review of a grant of a new trial is limited to whether the trial court abused its discretion." *Washington v. A & H Garcias Trash Hauling*, 584 A.2d 544, 545 (D.C.1990); *accord Oxendine v. Merrell Dow Pharm., Inc.*, 506 A.2d 1100, 1110 (D.C.1986). This exercise of discretion,

however, must "be based [on] and drawn from a firm factual foundation." *Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979).

The trial court set forth in detail numerous instances of improper conduct by plaintiff's counsel in issuing its order for a new trial: [13]

1. Throughout the trial, counsel for Ms. Brown attempted to elicit testimony that dealt with claims that had been ruled out of the case in earlier rulings of the trial court. Despite being directed to cease, counsel persisted with these impermissible lines of questioning.

2. Counsel for Ms. Brown repeatedly asked irrelevant questions of witnesses. Despite the fact that the trial judge frequently instructed counsel to stop doing so, counsel persisted. As the trial court noted, this unnecessarily placed a substantial amount of irrelevant information before the jury.

3. During a conference with both attorneys immediately prior to closing arguments, the court specifically noted plaintiff's counsel's prior failure to obey the court's instruction that she should not bring up claims that were not part of the trial and strongly cautioned Ms. Brown's counsel to not bring up any claims that had been dismissed or refer to any inadmissible evidence. Despite this warning and subsequent admonitions from the bench during closing argument, counsel continued to refer to the various dismissed claims during her argument.[14]

---

**13.** All of the relevant instances of misconduct by counsel were objected to by counsel for NAS, or addressed by the court *sua sponte*.

**14.** Ms. Mizrahi (during closing argument in open court): I hope you will agree that in the evidence presented before the court and the evidence that wasn't presented before the court that I have gone beyond that to prove-

THE COURT: Excuse me. You may not refer to evidence that was not presented to the court.
Ms. Mizrahi: With regard to the evidence that was attempted to be presented to the jurors and-

. . . .

The Court (during closing argument in open court): Counsel, I think you had a failure of proof on that also and the only

The usual way a court will attempt to remedy such misconduct by counsel is by giving curative instructions. In this case, the trial court did in fact give such instructions telling the jury not to consider the claims that had been taken out of the case or the evidence that had been excluded. Accordingly, we must now consider whether the trial judge abused her discretion in granting NAS's motion for a new trial based on her conclusion that the curative instructions were not sufficient to cure the prejudice to NAS caused by counsel's behavior, especially in light of the weakness of plaintiff's evidence.

In *Hall v. United States*, 171 F.2d 347, 349, 84 U.S.App.D.C. 209, 211 (U.S.App. D.C.1948), the court evaluated the prejudicial effects of the improper comments to the jury and the curative effects of the judge's corrective instructions. The reviewing court in *Hall* stated that "the question before us was considered by the trial judge upon a motion for a new trial. Much reliance should be placed upon his judgment of the matter." *Id.* at 349.

 We recognize that ordinarily "we must presume that the jury obeyed the instruction and ignored the inadmissible evidence." *Weeda v. District of Columbia*, 521 A.2d 1156, 1163 (D.C.1987); *accord Hall, supra,* 171 F.2d at 349, 84 U.S.App.D.C. at 211. "Nevertheless, the presumption of jury compliance with instructions is inapplicable if 'the contrary appears, or the circumstances are very unusual." *Weeda, supra,* 521 A.2d at 1164 (quoting *Hall, supra,* 171 F.2d at 349, 84 U.S.App.D.C. at 211). "A trial judge who has heard comments of counsel and observed the jury at the time thereof is, from the practical standpoint, in a much better position than the appellate court to judge of their effect," *Psychiatric Inst. of Washington, v. Allen,* 509 A.2d 619, 629 (D.C. 1986) (quoting *Washington Times Co. v. Bonner,* 66 App. D.C. 280, 292, 86 F.2d 836, 848 (App.D.C.1936)).

 In the instant case, the presumption that the jury obeyed the instructions is undercut by an evaluation of the evidence in the record. The evidence in support of the claim for retaliatory termination was weak.[15] On the other hand, the scope and degree of counsel's flagrant disregard of numerous orders from the trial judge was exceptional. During the course of the trial the jury heard relatively little evidence in support of Brown's claims. Additionally, the jurors also heard a significant amount of information which they were instructed to ignore. Given that, as correctly noted by the trial judge, the evidence in favor of the claim was weak, and given the deference that we accord the trial judge's evaluation of the prejudicial effect of counsel's conduct on the jury, we conclude that the trial court did not abuse its discretion in granting a new trial on this issue.

## V.

The retaliatory termination claim, discussed *supra,* was the only matter that remained for consideration after the first trial court entered its order granting a new trial. On February 15, 2000, a second trial on this issue commenced before Judge Herbert B. Dixon. At the close of the plaintiff's case, defendant NAS moved for judgment as a matter of law, arguing, *inter alia,* that Ms. Brown had failed to

thing you were allowed to pursue was a claim for what her salary was and the retirement benefits.
Ms. Mizrahi (Counsel for Plaintiff): I think the jury's verdict, the jury's recollection will decide.

**15.** The trial judge observed that the evidence was limited. "The court cannot say that these instructions were sufficient, especially in light of the weakness of plaintiff's evidence."

**1126**

establish a *prima facie* case of retaliatory termination and that that count was barred by limitations. The trial court granted judgment as matter of law in favor of NAS on the merits and, alternatively, on grounds of limitations.

During this trial, Ms. Brown stated that, upon receiving her termination letter on May 2, 1994, she believed she had been terminated because of her EEO complaint of July 1993. As we discuss, *supra*, this meant that for the purpose of the statute of limitations, the claim accrued on May 2, 1994, the day that Ms. Brown first believed that she had been terminated in retaliation for her EEO complaint. This on the record admission by the plaintiff effectively brings the matter to a close as she filed suit more than one year later.[16] Accordingly, we conclude that, in the second trial, the court properly granted judgment as a matter of law on the issue of retaliatory termination on statute of limitations grounds.

*Affirmed.*

---

**16.** In light of our decision on limitations, we do not reach Judge Dixon's ruling on the merits.